250 West 35th Street Corporation v. Commissioner.
250 West 35th St. Corp. v. Commissioner
Docket No. 2535.
United States Tax Court
1944 Tax Ct. Memo LEXIS 140; 3 T.C.M. (CCH) 850; T.C.M. (RIA) 44275; August 10, 1944
*140 Jacob Rabkin, Esq., 521 5th Ave., New York, N. Y., for the petitioner. Ned Fischer, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This is a proceeding for the redetermination of a deficiency in income and declared value excess profits tax for the calendar year 1940 in the amounts of $1,399.89 and $580.67. The sole issue is whether the petitioner realized taxable income of $12,177.02 by reason of its acquisition of mortgage certificates against its property and its application of those certificates in reduction of its mortgage debt. Findings of Fact The petitioner is a corporation organized under the laws of the State of New York in January, 1925. It filed its income and declared value excess profits tax return for the calendar year 1940 with the collector of internal revenue for the third district of New York. During 1925 petitioner purchased a parcel of land at 248-252 West 35th Street, New York City, and erected a loft building thereon. The cost of the land was $285,000, and the cost of the building $517,592.78. Upon the completion of the building the petitioner borrowed on its bond $600,000 at 6 percent from the New York Title and Mortgage *141 Co. secured by a first mortgage lien on the land and building. The petitioner has continuously owned and operated this property which has been substantially its only asset during its existence. The parcel of land fronts on West 35th Street, west of Seventh Avenue for 75 feet, and extends south slightly less than 100 feet. This is in the section known as the garment district which extends from 35th Street north to 39th Street and from Broadway west to Ninth Avenue. The building was a brick and steel structure of 16 stories containing stores on the street floor and divided by elevators running through the center of the building into 37 feet lofts on each floor above the street level. The tenants of the building have always been manufacturers of women's garments. During the early years of the building they were manufacturers who specialized in quality production. After 1932 the center of the garment district shifted eastward towards Broadway and Seventh Avenue with the result that the side streets west of Seventh Avenue lost their better tenants. This was due to the general increase of available space during the depression and to natural trend toward the center of the district by the *142 tenants who could afford to pay higher rents. This shift was particularly important on 35th Street, which has always been on the fringe of the district, since in this highly competitive industry a few blocks made a great difference in accessability to buyers. With this shift of the garment district petitioner's building lost its quality manufacturers and acquired manufacturers and contractors of low-price garments. The rental from this type of tenant is normally lower than that from quality manufacturers. Moreover, because of the construction of its building the petitioner could not offer the type of space which is best suited to the mass production of low-price manufacturers. From 1932 to 1940 losses from vacancies and failure to pay rent amounted to about 15 percent and in some years as high as 30 percent of former income. The petitioner adopted the practice of paying brokerage commissions of 1 1/2 times the rate provided by the New York City Real Estate Board in order to obtain tenants. As a result of these adverse factors the annual gross rent of the building declined from about $172,000 in 1927 to about $64,000 in 1937, $62,000 in 1939, and $65,000 in 1940. During 1940 no substantial *143 improvement in the financial condition of the petitioner was foreseeable. When the petitioner issued its $600,000 mortgage to the New York Title and Mortgage Co. in 1925 the mortgage issued to the public certificates known as Series N-56 Certificates against this mortgage indebtedness granting to the certificate holders the right to participate in interest and principal payments made by the mortgagor. By 1936 the petitioner was in default on its mortgage. In that year the State Mortgage Commission, as successor to New York Title and Mortgage Co., instituted a proceeding in the Supreme Court of the State of New York for the rehabilitation of the mortgage pursuant to Chapter 19 of the Laws of the State of New York, 1935. Pursuant to an order made October 6, 1936, a mortgage modification and extension agreement was executed; the mortgage was extended until March 1, 1941, with interest at 5 1/4 percent, and amortization at $5,070 per annum. The amortization was required to be paid in cash. During 1938, when the mortgage indebtedness amounted to approximately $469,000, petitioner advised the trustee for the certificate holders who had succeeded to the rights of the State Mortgage Commission *144 in the mortgage that further relief was necessary if the petitioner were to continue to own and operate the property. The petitioner requested a 2 percent interest rate and the waiver of amortization. The trustee examined the books of the petitioner and at a meeting of certificate holders called for the purpose of considering the petitioner's request presented the operating statement of the petitioner for 1937 and its statement of estimated income and expenses for 1938. After this meeting an application was made to the Court for authority to modify further the mortgage terms. Pursuant to an order made June 30, 1938, effective for the period March 1, 1938, to February 28, 1939. the interest rate was reduced to 2 1/2 percent per annum and amortization was waived. In February, 1939, the petitioner explained to the trustee that an extension of the modification agreement would be required. After an examination of the petitioner's books, the trustee called a meeting of the certificate holders for the purpose of relating the petitioner's request and presented his analysis of the petitioner's income and expenses. At that meeting it was agreed to extend the modification agreement until March *145 1, 1940, except that the petitioner would be required to amortize the mortgage at the rate of one-half of one percent per annum. It was agreed, however, that the petitioner could use that amount of cash to purchase its mortgage certificates and that it could apply the face amount of certificates so purchased in discharge of the mortgage debt. This agreement was incorporated in a report of the Court made on April 20, 1939. In February, 1940, petitioner again discussed with the trustee the question of extending the modification agreement. The trustee caused reports to be prepared by accountants and by a civil engineer and called a meeting of certificate holders on April 19, 1940, for the purpose of considering the petitioner's request. At this meeting these reports were presented and the petitioner's attorney analyzed the operations of the company and presented petitioner's request for further extension. It was agreed at this meeting to extend the modification agreement until March 1, 1943, with interest to continue at 2 1/2 percent per annum. The amorization requirement, however, was increased to one percent per annum. It was agreed that in lieu of the cash payment of amortization *146 the amount otherwise required to be paid could be used by the petitioner in purchasing its mortgage certificates and that the face amount of the certificates so purchased could be applied in discharge of the mortgage debt. Any part of the required amount of amortization not used to purchase certificates was required to be paid in cash to the trustee. On the other hand, any certificates purchased with an amount in excess of the required amount of amortization could not be applied in reduction of the mortgage debt. The agreement reached at this meeting was incorporated into an order of the Court made on July 8, 1940 (with the added provision that all rental income in excess of $64,000 be applied as amortization), and into a formal agreement between the petitioner and the trustee made on July 26, 1940. Pursuant to this agreement the petitioner at various times during the taxable year purchased certificates of the face value of $16,574.42 at a cost of $4,397.23, which were accepted by the trustee in reduction of $16,574.25 of the face amount of the mortgage debt. The purchases of these certificates were made through brokers in over-the-counter transactions at prices of $26 and $26.50 *147 per $100 face value. At the beginning of the taxable year the book value of petitioner's assets (including depreciated cost of land and building $624,007.48) was $637,676.14; and the amount of its liabilities (including the mortgage debt of $462,051.52, but excluding capital stock) was $479,737.82. At the end of the taxable year the book value of the petitioner's assets (including depreciated cost of land and building, $609,792.06) was $627,836.60; and the amounts of its liabilities (including the mortgage debt of $445,085.75, but excluding capital stock) was $459,877.51. No substantial changes in surplus occurred during the taxable year except by reason of the application of mortgage certificates in reduction of the mortgage debt. The fair market value of the land and building of petitioner during the taxable year was substantially less than $440,000. The petitioner was insolvent during the entire calendar year 1940. On its income tax return for 1940 the petitioner reported a net loss of $2,547.27. The respondent determined that the petitioner had an adjusted net income for 1940 of $9,564.85. In making such determination the respondent found that the petitioner realized a taxable *148 gain of $12,177.02 through the application of the above referred to certificates of the face value of $16,574.42 at a cost to it of $4,397.23. Opinion In this case the respondent argues upon the authority of , that the petitioner realized a taxable gain from the purchase of $16,574.42 of certificates of indebtedness at a cost of only $4,397.23. Whether it did or did not must depend upon whether the petitioner was solvent during the calendar year 1940; for it has been many times held that an insolvent corporation does not derive taxable income from the liquidation of a portion of its liabilities at a discount. ; ; ; . The respondent argues that the petitioner was solvent during the calendar year 1940. He contends that the fair market value of the petitioner's assets, which consisted almost entirely of the petitioner's real estate, had *149 a fair market value in excess of the face value of the mortgage. We think there is no merit to this contention. Qualified bona fide real estate appraisers testified for the petitioner that in their opinion the fair market value of the petitioner's real estate during 1940 did not exceed the amount of $350,000. We think it unrealistic to contend that a fair market value for petitioner's real estate was equal to the face value of its first mortgage when the evidence shows that over a period of years petitioner had not been able to earn the full amount of interest due upon its first mortgage and where the evidence shows that those certificates were selling in the open market at approximately 26 percent of their face value. In support of his contention that the fair market value of the property was in excess of the face amount of the mortgage the respondent introduced the testimony of a valuation engineer of the Government that in 1939 a building adjoining the petitioner's property on the west and comparable to that owned by the petitioner was sold at a price of slightly in excess of $600,000. This property was sold by the Colewell Realty Corporation to 256 West 35th Street Corporation. *150 The property was subject to first and second mortgages of approximately $600,000. The purchasing corporation paid only $3,000 cash. The record does not show the financial responsibility of the purchasing corporation, whether it assumed the mortgages owed by the vendor corporation, or whether the mortgages released the vendor corporation from liability. So far as the record shows the petitioner may have paid a small amount of cash for the purpose of acquiring title to the property which would enable it to collect and use the rents from the building; neither does the record show whether this was a bona fide and arms-length transaction. We are of the opinion that the weight of the testimony supports the contentions of the petitioner that the corporation was insolvent during the year 1940. It can not lightly be assumed that the fair market value of the petitioner's real estate in 1940 had a value equal to the amount contended for by the respondent in view of the facts that the petitioner had not been able to earn interest due on its first mortgage bonds for a period of years and that those were selling in the open market at approximately 26 percent of face value. In support of his contention *151 the respondent cites the decision of this Court in , now on appeal to the Circuit Court of Appeals for the Second Circuit. In that case it was held that the taxpayer was solvent during the taxable year. We have made the finding in the instant proceeding that the petitioner corporation was insolvent during the calendar year 1940. That case is therefore not authority for the respondent's contentions here. Decision of no deficiency will be entered.